UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 08-CV-2508 (JFB) (ETB)
_____

GLENDA GALIN

Plaintiff,

VERSUS

UNITED STATES OF AMERICA,

Defendant.
_____

**MEMORANDUM AND ORDER**
December 23, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Glenda Galin (hereinafter, "Galin" or "plaintiff") brings this action against the United States of America (hereinafter, "United States" or "defendant"), alleging that the levy imposed by the Internal Revenue Service (hereinafter, "IRS") on 155 Hill Street, Unit #19, Whitefield Estates, Southhampton, New York (hereinafter, the "Hill Street Property" or the "Property") was wrongful because plaintiff has an interest in the Hill Street Property senior to that of the IRS and execution of the IRS's levy will put the property into foreclosure, thereby irreparably injuring plaintiff's interest in the property. Plaintiff seeks to enjoin the United States from executing the levy on the Hill Street Property until her right as owner can be fully determined and protected.

Defendant moved to dismiss the complaint in this action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At oral argument, both parties consented to converting the motion to dismiss to a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, in order to allow the Court to consider documentation submitted in connection with the motion. The Court also gave the parties an opportunity to supplement their papers following the oral argument.

For the reasons set forth below, defendant's motion for summary judgment is granted. First, with respect to any wrongful levy claim based upon an equitable interest that plaintiff is claiming to have in the Hill Street Property, such claim fails as a matter of law for several independent reasons: (1) plaintiff lacks standing to assert an equitable interest in the Property (which would have dated back to the purchase of the property over 25 years ago)

because any such interest would have become the interest of the Bankruptcy Trustee at the time of plaintiff's bankruptcy in 2003; (2) plaintiff is collaterally estopped from asserting an equitable ownership interest in the Property based upon a good faith belief that the Property was jointly purchased with her husband during her marriage, because that precise issue was previously litigated with respect to another piece of property in the United States District Court for the District of Connecticut and decided against plaintiff; and (3) plaintiff is judicially estopped from asserting an equitable interest in the Property because she previously denied such interest in her bankruptcy filing. Second, with respect to any wrongful levy claim based upon a legal interest plaintiff acquired in the Property pursuant to a divorce agreement in August 2007, such a legal interest is junior to the defendant's interest in the Property, which includes a Notice of Federal Tax Lien that was filed on April 10, 2007 for tax assessments dating back to 1990. Accordingly, whether plaintiff asserts an equitable or legal interest in the Property, the wrongful levy action against the defendant fails to survive summary judgment as a matter of law.

I. BACKGROUND

A. Facts

The facts are drawn primarily from plaintiff's complaint (hereinafter, "Compl.") and supporting materials. Where defendant's submissions are cited, the facts are taken from defendant's papers and plaintiff does not dispute the fact asserted or has offered no evidence to refute that fact. The facts are construed in a light most favorable to plaintiff, the non-moving party.

1. Galin Marriage and Marital Property

According to the complaint, plaintiff is a 74 year-old grandmother of thirteen. (Compl. ¶ 7.) She married Dr. Miles Galin (hereinafter, "Miles" or "Dr. Galin") in 1953, and they remained married for over fifty years. (Compl. ¶¶ 8, 15.) During their marriage, Dr. Galin handled all of the family finances, including tax matters and real estate matters. (Compl. ¶ 9.)

Plaintiff alleges that she authorized Dr. Galin to sign all documents on her behalf, including tax returns and documents relating to the purchase and ownership of real estate investments, such as the Hill Street Property. (Compl. ¶ 14.) Plaintiff alleges that she "was led to believe and believed that all the real estate investments acquired during her marriage to Miles, including the Hill Street Property, were jointly owned." (Compl. ¶ 10.) According to plaintiff, "[t]he Hill Street Property was purchased during the marriage, more than twenty five years ago" and "[w]hen the Hill Street Property was purchased, [she] was informed, and believed, that it was purchased and owned jointly as marital property." (Glenda Galin Affidavit, dated June 23, 2008, at ¶ 12.)

2. Bankruptcy Petition

According to the complaint, in or around 2000, plaintiff learned that Dr. Galin had mishandled their finances, diverted marital property, and lost his ophthalmologic surgery practice. (Compl. ¶ 12.) Around this time, Dr. Galin lost his medical license and served time in federal prison and a halfway house. (Compl. ¶ 12.) Dr. Galin incurred significant tax and other debts, became insolvent, and was no longer able to support plaintiff.

(Compl. ¶ 12.)

Plaintiff alleges that while Dr. Galin was in prison, she learned for the first time that the real estate acquired during their marriage was titled in Dr. Galin's name alone, contrary to what she had been led to believe. (Compl. ¶ 13.) Plaintiff also learned that the joint tax returns filed by Dr. Galin caused her personal liability to the IRS and other taxing authorities of approximately $15 million. (Compl. ¶ 15.)

Plaintiff filed for personal bankruptcy in December 2003. (Compl. ¶ 15.) Plaintiff did not disclose any legal, equitable, or future interest in any real property in her bankruptcy filing. (Compl. ¶ 28; Schedule A of Galin's Bankruptcy Petition.) Plaintiff alleges that she believed she did not have any rights to real property as she "had been advised that both New York and Connecticut – where all the properties were located – were 'title states' meaning that [she] had no legal interest in or claim of ownership in any of [Dr. Galin's] real estate holdings unless and until [she] filed for divorce and established [her] rights via an equitable distribution claim or unless [she could] prove and prevail on a claim of fraud. In 2003 [she] was not yet ready to file for divorce or sue [her] husband and face the loss of [her] marriage along with everything else." (Compl. in *Galin v. IRS*, 563 F. Supp. 2d 332 (D. Conn. 2008) at ¶ 12.)

### 3. The Current Proceeding

Plaintiff divorced Dr. Galin in 2007. (Compl. ¶ 15.) In the Divorce Agreement, which was incorporated into the Judgment of Divorce granted on June 7, 2007, plaintiff was awarded ownership of the remaining marital property, including the Hill Street Property and a property located at 1091 West Purchase Road, Southbury, Connecticut (hereinafter, the "Connecticut Property"). (Compl. ¶¶ 16-18.) Title to the Hill Street Property was transferred to and recorded in plaintiff's name on August 14, 2007. (Compl. ¶ 19.) The tax assessments against Dr. Galin date back to 1990 and, on April 10, 2007, a Notice of Federal Tax Lien was filed against Miles Galin. (Defendant's Memorandum of Law, at Ex. 5.)

Once plaintiff took title of the Hill Street Property, she learned that the Property had been leased to Elizabeth Veneskey (hereinafter, "Veneskey"), who the IRS alleges to be Dr. Galin's alter ego. Veneskey then sublet the property to Paul Kerz (hereinafter, "Kerz"). Plaintiff decided to allow the sublease to run its course, on the understanding that Veneskey would pay all maintenance, condominium association assessments, and security alarm and monitoring services required by the Kerz sublease, and real estate taxes. (Compl. ¶ 20.) Veneskey was then permitted to keep the balance of Kerz's rent to compensate for prior efforts and expenditures of money by Veneskey to maintain the premises. (Compl. ¶ 20.) It was agreed that Veneskey would surrender all claims under her lease with Dr. Galin upon the expiration of the Kerz sublease on September 30, 2008. (Compl. ¶ 20.)

On February 28, 2008, the IRS served a Notice of Levy upon Kerz that stated: "This Notice of Levy attaches to monies paid to Elizabeth Veneskey, including but not limited to rental/lease payments made pursuant to the Lease Agreement [between Veneskey and Kerz] commencing October 1, 2007 through September 30, 2008 for the lease/rent of [the Hill Street Property]. . . ." This was done on the theory that Veneskey was the alter ego of

3

Dr. Galin.

Plaintiff alleges that the levy will result in foreclosure of the property as it will leave no one to pay the condominium and real estate tax obligations, and plaintiff lacks the means to do so. (Compl. ¶ 22.) Plaintiff claims that the levy is wrongful because it is issued on her property and she is not the person against whom the tax at issue is assessed, and her property rights, which are senior to the IRS, will be destroyed. (Compl. ¶ 24.)

2. The Lawsuit brought in the District of Connecticut

The Connecticut Property was purchased in 1991 by the Galins as marital property. Due to Dr. Galin's nonpayment of federal taxes, the IRS seized the Connecticut Property in 1997 and scheduled an auction-sale of the property for July 17, 2007 to partially satisfy outstanding federal tax liens against Dr. Galin personally. (Compl. in *Galin v. IRS* at ¶ 18.)

In June of 2007, plaintiff filed a lawsuit in the United States District Court for the District of Connecticut seeking a declaratory judgment that she was at minimum a 50% owner of the Connecticut Property. Galin argued that her equitable rights as a joint owner of the Connecticut Property dated back to its purchase in 1991 and, therefore, preceded any claim by the IRS for back taxes against Dr. Galin. (*Id.* at ¶ 22.) The court found that plaintiff was "judicially estopped from asserting her claim to the [Connecticut] Property" based on the fact that "in December 2003 Galin reported to the Bankruptcy Court in the Southern District of New York that she owned no real property and that no creditors held secured claims against her, despite the IRS's federal tax lien on the [Connecticut] Property." *Galin v. IRS*, 563 F. Supp. 2d 332, 338-41 (D. Conn. 2008). The court held that "[j]udicial estoppel requires that 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Galin*, at 338 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The court went on to state that "judicial estoppel is particularly appropriate when a party does not disclose an asset to the bankruptcy court and then brings a claim in another court based upon ownership of that asset." *Galin v. IRS*, 563 F. Supp. 2d at 338-39.

Plaintiff has appealed this ruling and the appeal is pending before the Second Circuit. Plaintiff argues that the likelihood of success of her appeal is great because the District Court explicitly found that "[t]he Second Circuit has not yet decided whether the judicial estoppel is appropriate in a case involving a good faith failure to disclose assets in a bankruptcy proceeding." *Id.* at 340.

B. Procedural History

Plaintiff filed a complaint in this action on June 24, 2008. On July 23, 2008, defendant filed a motion to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded on September 11, 2008. Defendant replied on September 26, 2008. Oral argument was heard on October 17, 2008. At oral argument, this Court gave both parties notice that the Court intended to convert the pending motion into a motion for summary judgment. Neither party objected. The Court also gave both

4

parties an opportunity to submit additional information to the Court. On October 31, 2008, defendant submitted additional information. On November 14, 2008, plaintiff advised the Court by letter that plaintiff rested on the previously submitted papers and evidence. The Court has fully considered all the submissions by the parties.

## II. STANDARD OF REVIEW

As a threshold matter, the Court addresses its decision to convert defendant's motion to dismiss into one for summary judgment. A district court may convert a motion to dismiss into one for summary judgment provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *see also Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983) ("Notice is particularly important when a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.").

Plaintiff's submissions include an affidavit and several documents alleging facts that are not in the complaint. Defendant also submitted documents on which it relies. On this basis, the Court advised the parties at oral argument that it would convert the motion and neither party objected. The Court further provided each party an opportunity to supplement their filings with any additional evidence. *In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985); *see* Fed. R. Civ. P. 56.

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## III. DISCUSSION

Plaintiff asserts an ownership interest in the Hill Street Property under two distinct theories: (1) that she has an equitable interest in the Property dating back to the time of purchase by the Galins (hereinafter, the "equitable interest claim"); and (2) that she obtained a legal interest in the Property in August 2007 as a result of the Galin's divorce settlement agreement (hereinafter, the "legal interest claim").

Defendant moves for summary judgment on plaintiff's claim of wrongful levy by the IRS on several grounds. Defendant argues that plaintiff lacks standing to bring suit based on her equitable interest in the Property, as

such an interest should now be deemed as part of her bankruptcy estate. Defendant further argues that plaintiff's claim of wrongful levy relies on her assertion of an equitable ownership interest in the Hill Street Property that she is collaterally estopped from making as a result of the judgment in the District of Connecticut. Defendant also argues that, even if plaintiff's equitable interest claim is not collaterally estopped, judicial estoppel should prevent her from asserting ownership over Property that she failed to disclose in her bankruptcy filing of 2003. Finally, defendant argues that the Anti-Injunction Act bars plaintiff's legal interest claim because plaintiff's interest would be junior to defendant's. The Court will address each issue in turn.

A. Standing

Defendant argues that plaintiff lacks standing to bring suit on the basis of a claim of equitable interest because "(1) [i]f plaintiff had an equitable interest in the [Hill Street] Property it would have incontestably been a pre-petition asset assigned to her bankruptcy estate by operation of 11 U.S.C. § 541, and no longer belong[] to the debtor; (2) there was no formal abandonment of the property by the estate because due to [p]laintiff's failure to schedule the asset, the Trustee did not know it existed. *See* 11 U.S.C. § 553(d)." (Defendant's Reply, at 6.) As set forth below, the Court agrees.

The Bankruptcy Code makes clear that "all legal or equitable interests of the debtor in property as of the commencement of the case" becomes part of the bankruptcy estate. 11 U.S.C. § 541. As the Second Circuit has explained, "Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate, to be comprised of 'all legal and equitable interests' of the debtor, 'wherever located and by whomever held.' The scope of this section is broad, and is intended to maximize the amount of property available for distribution to creditors according to priorities established by the Code." *Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) (internal citation omitted). Moreover, "Section 544 of the Bankruptcy Code gives the trustee in bankruptcy the status of a hypothetical judgment lien creditor. 11 U.S.C. § 544 (a)(1). The trustee hypothetically extends credit to the debtor at the time of filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest that could be reached by a creditor." *Id*. at 104.

In the instant case, under these applicable provisions, it is clear (and plaintiff's counsel conceded at oral argument) that any equitable interest plaintiff held at the time of her bankruptcy proceeding would have become the interest of the bankruptcy estate trustee. Therefore, plaintiff does not have standing to assert rights of the estate; rather, she only has standing to pursue her claim of legal right to the property, if any, arising out of the divorce agreement. *See, e.g., In re Dawnwood Properties*, 209 F.3d 116 (2d Cir. 2000) ("Once the trustee was appointed to maximize the assets of the Chapter 11 bankruptcy estate, neither [plaintiff] had standing to bring this adversary proceeding on [the company's] behalf].") Therefore, plaintiff's equitable interest claim fails as a matter of law for lack of standing, but plaintiff has standing to pursue her legal interest claim.

6

B. Collateral Estoppel/Issue Preclusion

Even assuming *arguendo* that plaintiff had standing to pursue her equitable interest claim, such claim would be barred by collateral estoppel.

A court may dismiss a claim on res judicata or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment. *See Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("the defense of *res judicata* or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment"); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992), *cert. denied*, 506 U.S. 821 (1992). In addition, the relevant facts for this motion, namely the judgment in the District of Connecticut action, are public documents subject to judicial notice, and are not in dispute. *See Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). If the prior judgment was rendered in federal court, as is the case here, the principles of collateral estoppel require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

The question, therefore, is whether the District of Connecticut's determination that plaintiff was judicially estopped from asserting equitable ownership of a property that she failed to disclose in her bankruptcy filing estops plaintiff from asserting such ownership over the Hill Street Property in the case at hand. As set forth below, the Court concludes that the above-referenced requirements for dismissal based on collateral estoppel are met with respect to any claim arising from a purported equitable interest in the Property. In fact, plaintiff does not argue that any of the requirements for finding collateral estoppel are lacking with respect to her equitable interest claim; rather, plaintiff argues that the Court should decline to estop plaintiff's claim here because the District Court of Connecticut erred in its ruling. As the purpose of collateral estoppel is to prevent issues from being re-opened and re-litigated, this argument is unavailing. If plaintiff's

7

argument is correct, then her appeal will be successful and this ruling can be re-examined at that time. Of course, plaintiff's legal interest claim in the Property was not previously litigated in Connecticut and is not subject to collateral estoppel. However, as discussed *infra*, the legal interest claim fails under the Anti-Injunction Act because it is junior to the IRS's levy.

### 1. Identity of Issues

#### a. Equitable Interest

Although the case before this Court involves a different property from that at issue before the District of Connecticut, the facts plaintiff cites to support both equitable ownership rights are identical: both properties were purchased during the Galin marriage; Galin alleges she was falsely led to believe that she was a named owner on the title of both properties; Galin claims she later learned that she was not a title owner of either property and, therefore, did not list an interest in either property in her bankruptcy petition in 2003; and ownership of both properties was purportedly transferred to plaintiff in the Galins' divorce settlement agreement in August of 2007. In the case before the District of Connecticut, plaintiff asserted "her equitable interest in the property on the grounds of her long marriage to Dr. Galin; her good faith belief in his representation that the property was purchased jointly; and her award of all marital property resulting from her divorce action." *Galin v. IRS*, 563 F. Supp. 2d at 336. Plaintiff there sought "a declaratory judgment that she was an equitable joint owner of the [Connecticut Property] since its purchase, predating all IRS liens on it" and "an injunction prohibiting the IRS from auctioning the property or taking other steps inconsistent with her property interest." *Galin v. IRS*, 563 F. Supp. 2d at 336. These are the same arguments raised here on the same facts.

Plaintiff does not argue that the issue of ownership alleged here is different from that asserted in the District of Connecticut. In fact, plaintiff acknowledges that she was estopped from asserting ownership in the District of Connecticut because "she failed to list [her interest in the Connecticut Property] in her bankruptcy petition, and she similarly failed to list her interest in the Hill Street Property in her bankruptcy petition." (Plaintiff's Memorandum of Law, at 21.) For these reasons, the identical issues requirement is met as to plaintiff's claim based on equitable rights.

#### b. Legal Interest

Plaintiff's legal rights with respect to the two properties are also similarly situated. Plaintiff was given title to the Connecticut Property in June 1997 *after* the IRS levied on the property. Therefore, any legal right she had to that property would have been junior to the IRS's levy and would not provide a basis to prevent the IRS from executing the planned auction-sale. Similarly, plaintiff took title to the Hill Street Property in August of 2007 *after* the United States had filed its Notice of Federal Tax Lien against all property of Miles Galin on April 10, 2007. As the federal tax lien takes root at the time the tax liability is assessed and filing notice of such a lien provides notice to any subsequent purchaser, plaintiff's legal interest in the Hill Street Property would be junior to the IRS's lien. This Court need not decide whether this constitutes identity of issues because, as discussed *infra*, this issue was not actually litigated and decided in the prior proceeding

8

and, thus, any legal interest in the Property is not subject to collateral estoppel.

### 2. Actually Litigated and Decided

The judgment in the District of Connecticut case was made on a motion to dismiss which was converted to a summary judgment ruling. A grant of summary judgment is a decision on the merits and, therefore, constitutes actual litigation unless the district court specifies otherwise. *See Yaohua Deng v. Aramark Educ. Group, Inc.*, 04 Civ. 4536 (DRH) (MLO), 2006 U.S. Dist. LEXIS 23460, at *10 (E.D.N.Y. Mar. 23, 2006); Restatement (Second) of Judgments § 27, comment d (1982). There is no plausible argument that the judgment of the District of Connecticut did not decide the equitable interest issue at hand in this case. Whether plaintiff was judicially estopped from asserting her ownership right in the property she previously failed to list in her bankruptcy petition was the *sole* issue upon which the court's judgment relied. Therefore, the identical issue was actually litigated and decided. On the other hand, while the legal interest issue was raised in the complaint in the prior litigation, there is no mention of it in the court's decision and no indication that it was actually litigated and decided. Therefore, the legal interest issue is not collaterally estopped.

### 3. Full and Fair Opportunity to Litigate

In the context of collateral estoppel, preclusive effect may be refused when there is a compelling showing of unfairness or inadequacy in the prior litigation. *See e.g., Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1233 (Fed. Cir. 2006) (citing *Montana v. United States*, 440 U.S. 147, 163-64 (1979)); *Jack Faucett Associates, Inc. v. American Tel. & Tel. Co.*, 744 F.2d 118, 126 (D.C. Cir. 1984) ("As a corollary to the concept that 'fairness' to the defendant must be the touchstone in offensive estoppel cases, issue preclusion cannot be invoked against a party who did not have a 'full and fair' opportunity to litigate the issue to be precluded") (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980) and *Blonder-Tongue Lab. v. University of Illinois Found.*, 402 U.S. 313, 333 (1971)). In *Blonder-Tongue* the Court indicated that the "full and fair" opportunity inquiry includes the question of "whether without fault of his own the [party against whom collateral estoppel is to be invoked] was deprived of crucial evidence or witnesses in the first litigation." *Blonder-Tongue*, 402 U.S. at 333.

There is no allegation that plaintiff was denied a full and fair opportunity to litigate the equitable interest issue, and none appears on the face of the record. A ruling on summary judgment is a ruling on the merits and provides a party a full and fair opportunity to litigate an issue. The Second Circuit has found a full and fair opportunity to litigate even in cases where the estoppel is based on a default judgment against the estopped party. *See Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

### 4. Necessary to the Judgment

As previously noted, the issue of judicial estoppel was the sole issue underlying the judgment by the District of Connecticut. As such, there is no question as to its necessity to the judgment.

### 5. Pending Appeal

Plaintiff's argument that collateral estoppel does not apply because the related case is on appeal is unpersuasive given that a decision is

"final" when judgment is entered, even if an appeal is later filed. *See Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987); *Brown v. Manufacturers Hanover Trust Co.*, 602 F. Supp. 549, 551 (S.D.N.Y. 1984) ("That the plaintiff is attempting to appeal the . . . [related decision] does not affect the outcome of this motion. In New York, the pendency of an appeal does not alter the res judicata effect of the challenged judgment.") (citing cases). Indeed, "[t]he pendency of an appeal . . . does not automatically diminish the preclusive effects of a prior adjudication." *Martin*, 830 F.3d at 264; s*ee also Hunt v. Liberty Lobby*, Inc., 707 F.2d 1493, 1497 (D.C. Cir. 1983) (noting "well-settled federal law" that appeal "does not diminish the res judicata effect of a judgment rendered by a federal court"); Restatement (Second) of Judgments § 13 & comment f (any "sufficiently firm" prior adjudication should be deemed "final" and accorded conclusive effect; the "better view is that a judgment otherwise final remains so despite the taking of an appeal unless [the] appeal actually consists of a trial de novo"). If this case is reversed on appeal, the plaintiff in this action can write to this Court informing the Court of this fact, and the Court has the ability to re-open the case pursuant to Fed. R. Civ. P. 60(b)(5) ("The Court may relieve a party . . . from a final judgment . . . [if] it is based on an earlier judgment that has been reversed or otherwise vacated").

Because the grounds for collateral estoppel are met with regard to plaintiff's assertion of ownership of the Hill Street Property based on an equitable interest dating back to its purchase, defendant's motion for summary judgment on plaintiff's claim of equitable ownership is granted. As plaintiff's alleged legal right of ownership arising out of her divorce agreement is not collaterally estopped, the Court must still assess defendant's alternative arguments for dismissal relating to that claim. In an abundance of caution, the Court will also consider the other arguments for dismissal as applied to plaintiff's equitable interest claim.

C. Judicial Estoppel

Defendant alternatively argues that plaintiff's claim cannot survive as a matter of law on the ground that plaintiff is judicially estopped from asserting equitable ownership of the Hill Street Property where she previously denied ownership in her bankruptcy filing. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding. *Negron v. Weiss*, 06-CV-1288 (CBA), 2006 U.S. Dist. LEXIS 69906, at *8 (E.D.N.Y. Sept. 27, 2006). "In the bankruptcy context, 'the rationale for [judicial estoppel] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" *Id.*; *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir. 1988) ("[A] long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights."). "[A] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was

adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (internal quotation marks omitted).

Plaintiff's current claim that she was the equitable owner of the Hill Street Property as of the time of purchase is clearly inconsistent with her position during her bankruptcy filing that she had no interest in any real property.[1] *See e.g., Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("It has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions.") (citations omitted). The second element – adoption of the position by a tribunal – "is usually fulfilled [in the bankruptcy context] when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor." *Negron v. Weiss*, 06-CV-1288 (CBA), 2006 U.S. Dist. LEXIS 69906, at *9 (E.D.N.Y. Sept. 27, 2006). The bankruptcy court in Galin's case accepted her assertion that she had no "legal, equitable, or future interest" in any real property. (Schedule A of Galin's Bankruptcy Petition.)

Other circuits have found that, even where the omission in a bankruptcy filing was based on mistake or ignorance, judicial estoppel should apply. *See Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1157 (10th Cir. 2007) ("[O]ur sister circuits, for what seem to us sound reasons, have not been overly receptive to debtors' attempts to recover on claims about which they 'inadvertently or mistakenly' forgot to inform the bankruptcy court."). Even if mistake were sufficient reason to decline to apply judicial estoppel, it only exists where the party lacked knowledge of the claim or had no motive for concealment. *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) ("Our review of the jurisprudence convinces us that, in considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."). That is not the case here. Plaintiff admits that she knew of her equitable interest at the time of the filing (she claimed that she "had been advised that both New York and Connecticut – where all the properties were located – were 'title states' meaning that [she] had no legal interest in or claim of ownership in any of [Dr. Galin's] real estate holdings unless and until [she] filed for divorce and established [her] rights via an equitable distribution claim or unless [she could] prove and prevail on a claim of fraud. In 2003 [she] was not yet ready to file for divorce or sue [her] husband and face the loss of [her] marriage along with everything else." (Compl. ¶ 28.)) and she certainly had a motive for concealing it.[2] For

---

[1] Defendant also argues that plaintiff's claim that "she believed until some time after her husband went to jail that the [Hill Street] Property was jointly titled in her name and that of Miles Galin" is inconsistent with her prior position in her bankruptcy petition. (Defendant's Memorandum of Law, at 8.) Reading plaintiff's complaint in the light most favorable to plaintiff, it is possible that her discovery that she was not on the original title occurred before her bankruptcy filing, as Dr. Galin went to jail in 2000.

[2] Defendant argues that judicial estoppel is particularly appropriate where, as here, the change in position prejudices the party who acquiesced in

these reasons, the Court finds that judicial estoppel applies to plaintiff's alleged equitable interest dating back to the purchase of the Hill Street Property.

With respect to any legal (as opposed to equitable) interest, "if the statements or positions in question can be reconciled in some way, estoppel does not apply." *Negron v. Weiss*, 06-CV-1288 (CBA), 2006 U.S. Dist. LEXIS 69906, at *10 (E.D.N.Y. Sept. 27, 2006). Here, the assertion of a legal right of ownership over the Hill Street Property can be reconciled with the omission of her equitable interest in her bankruptcy filing. The legal right arguably arose out of plaintiff's divorce agreement – *after* the close of the bankruptcy proceedings – and, therefore, plaintiff is not judicially estopped from asserting it.

### D. Anti-Injunction Act

Although plaintiff has standing to assert a claim of legal interest in the Property acquired in August 2007 and such is not precluded by collateral estoppel or judicial estoppel, defendant argues that an attempt to enjoin an IRS collection based on that legal interest falls under the Anti-Injunction Act, 26 U.S.C. § 7421, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Defendant, therefore, argues that the claim at issue can only succeed if plaintiff can show that (1) under the most liberal view of the facts and the law, the United States could not establish its claim, and (2) collection would cause the taxpayer irreparable harm with no alternative remedy. *South Carolina v. Regan*, 465 U.S. 367, 374-79 (1984); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *see also Randell v. United States*, 64 F.3d 101, 106-07 (2d. Cir. 1995).

Plaintiff does not argue that she can satisfy the above-referenced standard, but rather asserts that her claim falls within 26 U.S.C. § 7426(a)(1), which states that "[i]f a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." "A levy is wrongful if it 'will or does effectively destroy. . . [an] interest in the property which is *senior* to the federal tax lien.'" *Trust Co. of Columbus v. United States*, 735 F.2d 447, 448 (11th Cir. 1984) (quoting IRC Reg. § 301.7426-1(b)(iv)(d)); *see also Flores v. United States*, 551 F.2d 1169, 1171 (9th Cir. 1977).

The critical issue, therefore, is whether plaintiff has an interest that is effectively destroyed and, if so, whether it is senior to the federal tax lien.[3] "A lien imposed pursuant to

---

the previous position. *See New Hampshire v. Maine*, 532 U.S. at 749. The United States stipulated to the discharge of over $4 million of Galin's income tax liability in reliance on her filing. (Defendant's Memorandum of Law, at Ex. 3.)

[3] Neither party addresses the fact that the property levied is the income stream from Veneskey's sublease rather than the property itself or whether the levy of that income stream will necessarily result in irreparable harm to plaintiff's alleged property interest. It is not clear that cutting off the sublease payments to the lessee

[26 U.S.C. § 6321] . . . is deemed to arise at the time that the assessment is made and continues until the amount of liability set forth in the assessment is satisfied." *United States v. McCombs*, 30 F.3d 310, 321 (2d Cir. 1994); *see* 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."). Further, a Notice of Federal Tax lien gives notice to any subsequent property holder that the tax lien is senior to the subsequent party's interest. *See United States by & ex rel. IRS v. McDermott*, 507 U.S. 447, 453 (1993) ("the filing of notice renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property").

In the instant case, any interest plaintiff had in the Hill Street Property prior to December 2003 would have become part of her bankruptcy estate, and plaintiff would no longer have an interest in it. Plaintiff's interest, if any, transferred to her at the time of her divorce agreement of August 14, 2007 and, therefore, does not pre-date the IRS's Notice of Federal Tax Lien against all property of Miles Galin, which was filed on April 10, 2007. (Defendant's Memorandum of Law, at Ex. 5.) Defendant's tax assessments against Dr. Galin date back to 1990 (*see* Defendant's Supplement), but, even if plaintiff were a purchaser as defined in 26 U.S.C. § 6323(a), the Notice of Lien would give her sufficient notice and her interest arising after the Notice would be junior to the defendant's. Therefore, plaintiff's legal interest, if any, arising from her divorce settlement on August 14, 2007 is junior to defendant's interest based upon the filing of the Notice of Federal Tax Lien on April 10, 2007. Accordingly, her claim of wrongful levy based upon the legal interest acquired in August 2007 is prohibited by the Anti-Injunction Act and cannot survive summary judgment.

IV. CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment is granted pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 23, 2008
Central Islip, New York

\* \* \*

---

would affect the agreement between the lessee and plaintiff. If Veneskey ceases the agreed-upon payments as a result of the levy on Kerz's payments, plaintiff's remedy would be to terminate the lease and find a new lessee. It requires several logical jumps to conclude that the levy on the sublease payments leads directly to the foreclosure of the property. In any event, regardless of the resolution of this issue, plaintiff's legal claim is clearly junior to the defendant's tax lien for the reasons discussed *infra* and, thus, the lawsuit is barred by the Anti-Injunction Act on that ground.

The attorney for plaintiff is Alan Roberts, Esq. of the Law Offices of Alan Roberts, 47 Aberdeen Drive, Huntington, New York, 11010. The attorney for the defendant United States of America is Joseph Rodriguez, Esq. of the U.S. Department of Justice - Tax Division, 555 4th Street, Jcb 7827, Washington, DC 20001.